## Pittsburgh & State Line R. Co., Appt., *v.* Simon Rothschild et al.

When two corporations of different states become, by the co-operating legislation of those states, a consolidated corporation, such consolidated corporation, when acting in its corporate capacity in either of the states, acts under the authority of the charter of that state, and the legislation of the other state has no operation beyond its territorial limits.

A mortgage of the property of a corporation is an increase of its indebtedness, and can be effected only in compliance with article 16, § 7, of the Constitution of Pennsylvania, and the act of April 18, 1874.    Otherwise, the mortgage is void.

Foreclosure proceedings in New York are ineffectual to pass title to property in Pennsylvania.

A shareholder of the consolidated company who has accepted and dis-

---

Cited in Jutte v. Hutchinson, 29 Pittsb. L. J. N. S. 87.

NOTE.—The provision of the Constitution, and the act of April 18, 1874, regulating the increase of indebtedness of corporations, applies only to those corporations chartered subsequently, or which have accepted the Constitution.    Lewis v. Jeffries, 86 Pa. 340; Gloninger v. Pittsburgh & C. R. Co. 139 Pa. 13, 21 Atl. 211.

posed of bonds thus illegally issued, although he might be precluded from questioning the validity of the bonds and mortgage, may yet assert want of title in the purchaser of the corporate property situate in Pennsylvania and sold under the foreclosure proceedings in New York.

(Decided May 31, 1886.)

Appeal from a decree of the Common Pleas of Elk County granting a preliminary injunction and appointing a receiver. Affirmed.

Reported below, 1 Pa. Co. Ct. 620.

This was a bill filed by Simon Rothschild and others, stockholders to the amount of more than 10,000 shares of the Rochester & Pittsburgh Railroad Company, against the Rochester & Pittsburgh Railroad Company, the Rochester & Pittsburgh Coal & Iron Company, the Pittsburgh & State Line Railroad Company, the Union Trust Company of New York, Adrian Iselin, and others.

The bill, supported by affidavits, alleged, *inter alia,* that the Rochester & Pittsburgh Railroad Company had claimed (as a consolidated corporation existing under the laws of the states of New York and Pennsylvania by virtue of articles of consolidation and merger dated September 28, 1881, between it, three railroad corporations organized under the laws of New York, and two organized under the laws of Pennsylvania) to own a line of railroad extending from Rochester, New York, to a point about 100 miles within the state of Pennsylvania; that the articles provided for an issue, by the consolidated company, of shares to the amount of $10,000,000, in exchange for the shares of the six consolidating companies, although the aggregate capital of the six companies was only $6,310,000; that after the alleged consolidation the capital stock of the consolidated company was unlawfully increased to $20,000,000; that on the 1st day of February, 1884, the Rochester & Pittsburgh Railroad Company executed to the Union Trust Company of New York, as trustee, to secure an issue of bonds not exceeding $4,000,000, a mortgage of the entire line of railroad of the

Rochester & Pittsburgh Railroad Company in the states of New York and Pennsylvania; that the mortgage was recorded in the several counties through which the line passed; that, for default in payment of interest, a bill of foreclosure was filed by the trustee, October 2, 1884, in the supreme court of Monroe county, New York, and John M. Davy, the referee appointed by decree therein, having ascertained that the amount required to discharge the mortgage debt was $2,056,292.11, sold and conveyed, October 16, 1885, to Adrian Iselin, in consideration of $1,100,-000, the entire line of railroad in the states of New York and Pennsylvania; that from the record of the proceedings for foreclosure it appeared due notice, under § 1631 of the New York Code of Civil Procedure, had been filed in the counties of both states in which the line was located; that after the sale the said Iselin had procured the incorporation of the Pittsburgh & State Line Railroad Company and the Buffalo, Rochester, & Pittsburgh Railroad Company,—the former under the laws of Pennsylvania and for the purpose of operating a line of road identical in description with so much of the line of the Rochester & Pittsburgh Railroad Company as was within the state of Pennsylvania, and the latter under the laws of New York, and for the purpose of taking title to so much of the line as was within the state of New York; that, under a deed from said Iselin, the Pittsburgh & State Line Railroad Company had taken possession of, and was operating, all the line of road within the state of Pennsylvania; and that a consolidation of the Pittsburgh & State Line Railroad Company and the Buffalo, Rochester, & Pittsburgh Railroad Company was about to be effected.

The bill charged that the foreclosure proceedings were collusively and fraudulently instituted; that the supreme court of Monroe county, New York, had no jurisdiction to devest title to the line of railroad in the state of Pennsylvania; that the sale to Iselin was ineffectual to pass title to that part of the line, and that, therefore, the occupation of the line by the Pittsburgh & State Line Railroad Company was unlawful.

The bill prayed the appointment of a receiver of the Rochester & Pittsburgh Railroad Company, and an injunction, temporary until hearing and perpetual thereafter, *inter alia,* restrain-

ing the Pittsburgh & State Line Railroad Company from interfering with the operation of the line of the Rochester & Pittsburgh Railroad Company, or consolidating with the Buffalo, Rochester, & Pittsburgh Railroad Company.

Upon appointing a receiver and granting a preliminary injunction as prayed, MAYER, P. J., after stating the facts, delivered the following opinion:

Conceding that the increase of the capital stock of the consolidated company was in excess of the amount authorized by the consolidating acts of the states of New York and Pennsylvania, and consequently illegal, it does not follow that the consolidated company has no valid or legal existence, or that the validity of such consolidation can be assailed in this collateral proceeding. Its legality can only be questioned by the state, and then only in a direct proceeding instituted for the purpose. Where a corporation has abused its powers, or committed acts which are unlawful, it nevertheless continues to exist as a corporate body, until the state or government which created it shall, by a proper proceeding, procure an adjudication and enforce a forfeiture of the charter. But all such proceedings are at the instance and on behalf of the state or government. Ormsby v. Vermont Copper Min. Co. 65 Barb. 360.

The invalidity of a charter cannot be inquired into collaterally, and least of all by a member who has enjoyed the benefits of its privileges. Dyer v. Walker, 40 Pa. 157; Hanover Junction & S. R. Co. v. Grubb, 82 Pa. 36.

When a charter has actually been granted to certain persons to act as a corporation, and they are actually in the possession and enjoyment of the corporate rights granted, such possession and enjoyment will be held against one who has dealt with them in their corporate character. Ang. & A. Priv. Corp. § 80.

He cannot be permitted to prove, in a collateral proceeding, that a condition precedent to its full corporate existence has not been complied with. When there is a *de facto* corporation, and the state does not interfere, its corporate existence and its ability to contract cannot be questioned. Spahr v. Farmers' Bank, 94 Pa. 434; Douglas County v. Bolles, 94 U. S. 104, 24 L. ed. 46.

The bill further charges that the bonds issued by the consoli-dated company, and the mortgage securing the payment of the same, executed and delivered to the Union Trust Company of New York, and upon which the foreclosure proceedings were had in the supreme court of Monroe county, New York, were illegal and void, so far as they affected the property of the corporation in the state of Pennsylvania; that the bonds were issued in disregard of article 16, § 7, of the Constitution of Pennsylvania, and of the act of assembly of April 18, 1874, passed to enforce the provisions of said constitutional article; that the issuing of said bonds and the creation of said mortgage, by reason of the violation of the Constitution and the laws of the state of Pennsylvania, became no lien upon the corporate property in this state; that bonds and mortgages of a corporation are within the term "indebtedness," as declared in the Constitution, will hardly be controverted.

There surely cannot be higher or more dangerous debts as applied to corporations, and they come within the meaning and intention of the law. The manifest purpose of the constitutional provision and the act of April 18, 1874, was, that the owners of corporate property should be able to exercise some control and supervision over their property and the agents who manage it; and that stockholders should be afforded an opportunity to pass upon the question of mortgaging their property. Thus, by the adoption of this constitutional provision, the state of Pennsylvania has declared a fundamental policy in regard to the increase of the indebtedness of corporations, and prescribed under what restrictions and regulations such indebtedness shall be created.

It was not claimed on the argument that the requirements of the Constitution of Pennsylvania and the act of 1874 had been complied with, in the issuing of the bonds and the creation of the mortgage, but it was insisted that, although the Rochester & Pittsburgh Railroad Company had increased its indebtedness, and had issued its bonds and executed the mortgage so as to conflict with the Constitution and laws of Pennsylvania, they do not apply to the acts of the corporation when acting in New York; and that the corporation, having authorized there the is-

suing of the bonds, and being valid by the laws of that state, they are valid in Pennsylvania.

I do not assent to the correctness of this position. Although by the terms of the consolidating acts of the two states the consolidating corporations are deemed and taken to be one corporation, yet it has no legal existence in either state, except by the laws of that state; and the consolidated company, so far as the regulation and control of its corporate property is concerned, must necessarily be subject to the Constitution and laws of such state, unless such control and supervision have been surrendered; so that when the consolidating corporations became one corporation by the co-operating legislation of the two states, it was subject to all the provisions of the Constitution and laws of Pennsylvania, and "all the restrictions, disabilities, and duties of each of such consolidating corporations." *Vide* consolidation act of Pennsylvania of 1865.

The status of a company acting under charters from two states is that of an association incorporated in and by each of the states, and, when acting as a corporation in either of the states, it acts under the authority of the charter of the state in which it is then acting, and that only; the legislation of the other state having no operation beyond its territorial limits. Racine & M. R. Co. v. Farmers' Loan & T. Co. 49 Ill. 331, 95 Am. Dec. 595.

The new company stands in the same relation to each state as the original company in that state. Delaware Railroad Tax, 18 Wall. 206, *sub nom.* Minot v. Philadelphia, W. & B. R. Co. 21 L. ed. 888.

In Graham v. Boston, H. & E. R. Co. 14 Fed. 757, in speaking of the consolidation of several railroad companies into one company, under the laws of several states, the court, in its opinion, says: "In such cases the corporation has a common stock, the same shareholders and officers, the same property and a single organization, and is for most purposes one corporation. But it is a separate corporation in each state so far that it is governed by the laws of each state within its own territory." Generally speaking, the validity of a contract is to be decided by the law of the place where it is made, unless it is to be performed

in another country; in the latter case the contract, as to its validity, nature, obligation, and interpretation, is to be governed by the law of the place of performance. Story, Confl. L. §§ 242–280.

If valid when made it is, by the general law of nations, *jure gentium,* held valid everywhere by tacit or implied consent of the parties. Id. § 252.

But there is an exception to the rule as to the universal validity of contracts, which is, that no state will recognize or enforce a contract which would be repugnant to its policy, or injurious to the rights, the interests, or the convenience of such state or its citizens. Id. § 244.

This exception results from the consideration that the authority of acts done and contracts made in other states, as well as the laws by which they are regulated, are not *proprio vigore* of any efficacy beyond the territorial limits of that state; and whatever effect is attributed to them elsewhere is from comity, and not of strict right.

"Whenever a state sufficiently indicates that contracts which derive their validity from its comity are repugnant to its policy, or are considered as injurious to its interests, the presumption in favor of its adoption can no longer be made." Bank of Augusta v. Earle, 13 Pet. 519, 10 L. ed. 274.

"No state is bound to recognize and enforce contracts injurious to its own interests or those of its subjects, although valid by the law of the place where made." Buckner v. Watt, 19 La. 216, 36 Am. Dec. 671; Chapman v. Robertson, 6 Paige, 627, 31 Am. Dec. 307; Saul v. His Creditors, 5 Mart. N. S. 569, 16 Am. Dec. 212; Arayo v. Currell, 1 La. 528, 20 Am. Dec. 286.

That the recognition and enforcement of the contract made in New York, for the issuing of the bonds and the creation of the mortgage, whereby the rights of stockholders in the corporate property of the company in Pennsylvania would be seriously affected and impaired, is contrary to the policy and interests of this state, is evidenced by the fact that the state has incorporated into its organic law a prohibition against the making of such contracts, unless by complying with the require-

ments of her constitutional provision and the laws passed to carry it into effect. The corporation, although acting in New York and according to laws of that state, and having issued the bonds which are valid there, could not create a debt which would bind the corporate property in Pennsylvania, in violation of its Constitution and laws. It would be in contravention of the policy of this state, as declared in its fundamental law; and such a contract cannot be recognized or enforced here.

Consequently, the bonds and mortgage are invalid and void, and the rights of the stockholders in the corporate property and franchises of the company in Pennsylvania are unaffected, unless by the foreclosure proceedings had in the supreme court of Monroe county, New York, these rights have been extinguished by the decree and sale.

This brings us to the consideration of the legal effect of the decree in that court, and the sale made under it. The supreme court of Monroe county, New York, has a general jurisdiction, both at law and in equity; and, by the Revised Statutes of that state, it is enacted that "the powers and jurisdiction of the court of chancery are coextensive with the powers and jurisdiction of the court of chancery in England, with the exceptions, additions, and limitations created and imposed by the Constitution and laws of this state."

Article 4, § 1626, of the Code of Civil Procedure provides: "In an action to foreclose a mortgage upon real property, if the plaintiff becomes entitled to final judgment, it must direct the sale of the property mortgaged, or of such part thereof as is sufficient to discharge the mortgage debt, the expenses of the sale and the costs of the action."

Section 1631 provides: "The plaintiff must, at least twenty days before a final judgment directing a sale is rendered, file, in the clerk's office of each county where the mortgaged property is situated, a notice of the pendency of the action, as prescribed in § 1670 of this act, which must specify, in addition to the particulars required by that section, the date of the mortgage, the parties thereto, and the time and place of recording it."

Section 1632 provides: "A conveyance upon a sale made

pursuant to a final judgment, in an action to foreclose a mortgage upon real property, vests in the purchaser the same estate, only, that would have vested in the mortgagee if the equity of redemption had been foreclosed. Such a conveyance is as valid as if it was executed by the mortgagor and mortgagee, and is an entire bar against each of them, and against each party to the action who was duly summoned, and every person claiming from, through, or under a party, by title accruing after the filing of the notice of the pendency of the action, as prescribed in the last section."

That this section only defines the effect of the deed cannot be controverted. It is apparent that the entire proceedings in the court of Monroe county were based upon the statutes of said state, were local in their character, and not intended to have any extraterritorial effect, unless, as is claimed, that portion of the decree which bars the equity of redemption of the mortgagor has that effect. But it will be noticed that it was only "after filing of notices of the pendency of the action" that the defendant's equity of redemption was barred and foreclosed; and the record shows that this notice was only filed in the counties of the state of New York through which the railroad runs and where the mortgage is recorded, thus indicating that the decree was to have no further force and effect than to bar and foreclose the equity of redemption of the mortgagor in the mortgaged premises in the state of New York. But, aside from this, is the decree of the New York court effective to pass the entire title of the mortgaged premises, both in New York and Pennsylvania, to the purchaser, and is it conclusive upon the rights of the plaintiffs?

It is clear that the decree of sale, and the deed made in pursuance of it, are ineffective to pass the title of the property in Pennsylvania. In speaking of sales made under a decree of a court of equity in proceedings to foreclose a mortgage, the author of Jones on Mortgages says (vol. 2, § 1608): "A sale under a decree of court is, in contemplation of law, the act of the court. It is made through the instrumentality of some officer designated by statute, or appointed by the court. Whatever name be given to this officer, whether master in chancery,

referee, trustee, commissioner, or sheriff, in making the sale he acts as the agent of the court." *Vide* Heyer v. Deaves, 2 Johns. Ch. 154; Mayer v. Wick, 15 Ohio St. 548.

Though a person having the legal title to land in one state may be decreed by a court of equity in another state to convey the land, yet neither the decree nor any conveyance by virtue of it, by one not having the title, can operate beyond the jurisdiction of the court. Watkins v. Holman, 16 Pet. 25, 10 L. ed. 873.

A court of chancery, having jurisdiction over the person who has the legal title to lands in another state, may, by a decree, force him to convey to the holder of the equitable title for whom he stands as trustee; but it cannot, by its decree, or through a deed of a commissioner, pass that title. Watts v. Waddle, 6 Pet. 389, 8 L. ed. 437.

It is claimed that, under the provisions of the Constitution of the United States, the decree of the New York court, barring the equity of redemption of the mortgage in the mortgaged premises, is an adjudication of the validity of the bonds and mortgage, conclusive upon the rights of the plaintiffs, and a bar to any proceedings in this state.

Assuming that the decree was not local in its character and effect, is it conclusive upon these plaintiffs?

It is established that the decree and judgment of a court of competent jurisdiction of a sister state has the same credit, validity, and effect in the courts of another state which it had in the state where it was rendered. But it is as well settled that the inquiry is always open whether the court by which a judgment was rendered had jurisdiction of the person or thing. "Upon principle," says Chief Justice MARSHALL, "it would seem that the operation of every judgment must depend on the power of the court to render that judgment; or, in other words, on its jurisdiction over the subject-matter which it has determined." Rose v. Himely, 4 Cranch, 269, 2 L. ed. 617.

Justice STORY, in his Commentaries on the Constitution, after stating the general doctrine established with regard to the conclusive effect of judgments of one state in every other state, says: "But this does not prevent an inquiry into the juris-

diction of the court in which the original judgment was given, to pronounce it; or the right of the state itself to exercise authority over the persons or the subject-matter. The Constitution did not mean to confer [upon the states] a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the territory." § 1313.

"Want of jurisdiction may be shown, either as to the subject-matter, or the person, or, in proceedings *in rem,* as to the thing." Thompson v. Whitman, 18 Wall. 457, 21 L. ed. 897.

These authorities fully sustain the position that want of jurisdiction of a court over the subject-matter may be shown at any time; and a judgment rendered in the absence of jurisdiction is inoperative and void. The following propositions have been established by repeated decisions: Where the subject-matter of the suit is strictly local, the jurisdiction of the court depends upon such locality, and can only be exercised in the state where the subject-matter is located. In other words, where the subject-matter is local, and the suit is brought for the purpose of directly affecting or acting upon the subject-matter, and the decree when rendered and the relief when granted would operate directly upon such subject-matter, and not merely upon the person of the defendant, then the situation of the subject-matter determines the proper place for the exercise of the jurisdiction; the jurisdiction can only be exercised in the state where such subject-matter is located. 1 Pom. Eq. Jur. § 298, Mississippi & M. R. Co. v. Ward, 2 Black, 485, 17 L. ed. 311; Massie v. Watts, 6 Cranch, 148, 3 L. ed. 181.

On the other hand, although the subject-matter may be local, as, for example, a tract of land, still, if the object of the suit is to directly deal with and affect the person of the defendant party, and not the subject-matter itself, and the decree when rendered and the relief when granted would in fact directly affect and operate upon the person of the defendant only, and would not directly operate upon the subject-matter, then the suit may be maintained in any state where the court obtains jurisdiction of the person of the defendant, although the subject-matter of the controversy referred to and described in the

decree, and ultimately but indirectly affected by the relief granted, may be situated in another state. 1 Pom. Eq. Jur. p. 332.

Under these rules, it cannot be successfully contended that the decree of the New York court, barring the equity of redemption, can have the effect of transferring any title; nor does it determine the validity of the mortgage as to the property of the corporation in this state. To hold a contrary doctrine would be conferring jurisdiction upon the courts of one state to determine in what mode real estate may be disposed of in another state.

"No principle is better established than that the disposition of real estate, whether by deed, descent or by any other mode, must be governed by the law of the state where the land is situated. Watkins v. Holman, 16 Pet. 25, 10 L. ed. 873.

Thus, Judge Story declares that, "not only lands, but servitudes and easements and other charges on lands, as mortgages and rents and trust estates, are deemed to be, in the sense of the law, immovables, and governed by the *lex rei sitæ*. The only way by which title can be made to such liens, or the only process by which such liens can be enforced, is that of the situs." Wharton, Confl. L. § 291. So, the validity of a mortgage, as a lien on land, is to be determined by the law of the place where the land is situate, although both the parties reside in another state. Goddard v. Sawyer, 9 Allen, 78.

In that case both parties resided in the state of New Hampshire; the mortgage was executed there and would have been valid in that state.

It is true, however, that the law is modified when the mortgage of land is merely collateral and subsidiary to a personal contract of loan. In such case, while the mortgage or pledge cannot be enforced, or the land touched, except in the court having local jurisdiction, it is otherwise with regard to the contract, which is governed by the law of the place in which such contract has its proper seat. Wharton, Confl. L. § 292.

But in such case proceedings must be instituted upon the principal indebtedness or personal contract, and not upon the collateral.

It remains to consider the question raised as to the right of these plaintiffs to maintain this bill.

(After citing authorities that one shareholder can maintain such a bill [Dodge v. Woolsey, 18 How. 331, 15 L. ed. 401; Morrill v. Boston & M. R. Co. 55 N. H. 531; Sandford v. Catawissa, W. & E. R. Co. 24 Pa. 378, 64 Am. Dec. 667; Cumberland Valley R. Co.'s Appeal, 62 Pa. 218], His Honor proceeded as follows): It is alleged in the affidavits presented by the defendants, and not denied in the counter affidavits, that W. H. Olmstead, one of the plaintiffs, accepted one of the bonds and disposed of it, thereby ratifying the act of the corporation in the issuing of the bonds.

While this might preclude him from questioning the validity of the bonds and mortgage, it would not bar his right as a stockholder to assert a want of title in the purchase of the corporate property under the foreclosure proceedings in the state of New York, and maintain a bill for the protection of his interest as a stockholder in the corporate property in Pennsylvania. What has been said in regard to the validity of the charter of the Rochester & Pittsburgh Railroad Company will apply as well to the charter of the Pittsburgh & State Line Railroad Company. The plaintiffs cannot assail its legality in this proceeding. My conclusions upon the whole case are:

First. That this bill can be maintained by the present plaintiffs, who are stockholders of the Rochester & Pittsburgh Railroad Company.

Second. That the issuing of the bonds and the creation of the mortgage were in contravention of the policy of this state, as declared in its Constitution and the laws passed to enforce it, and are, therefore, illegal and void; and the lien of the mortgage did not bind the property of the corporation in Pennsylvania.

Third. That the proceedings had in the supreme court of Monroe county, New York, for the foreclosure of the mortgage, were local in their character, and can have no extraterritorial effect.

Fourth. That the decree of sale and the deed made in pursuance of it are ineffective to pass the title of the corporate

property in Pennsylvania to Adrian Iselin, the purchaser, or his vendee, the Pittsburgh & State Line Railroad Company.

Fifth. That the decree foreclosing the equity of redemption of the mortgagor had only the effect of foreclosing its equity of redemption in the mortgaged premises in the state of New York.

Sixth. That such decree is not conclusive upon the rights of the plaintiffs, as the courts of the state of New York had no jurisdiction to pass upon the validity of the mortgage as to the property of the corporation in Pennsylvania.

Seventh. That, although the issuing of the bonds by the corporation while acting in the state of New York was a valid corporate act in that state, and could be enforced there, yet such contract, being repugnant to the policy of this state in regard to the increase of "indebtedness" of corporations, cannot be recognized or enforced by the courts of this state; and that the adjudication by the courts of New York state upon the validity of the bonds would not be binding and conclusive upon the courts of this state.

These conclusions are not in conflict with the principles decided in the cases of Muller v. Dows, 94 U. S. 444, 24 L. ed. 207, or McElrath v. Pittsburg & S. R. Co. 55 Pa. 189.

In neither of these cases was the question raised as to the validity of the mortgage, or the power of the corporation to create it. The corporation having the power to create the mortgage, the title of the property would pass, subject to the equity of redemption of the mortgagor, which could be barred and foreclosed by proper proceedings. But where the power to create a mortgage is wanting, the title would not pass, and there would be no equity of redemption which could be barred or foreclosed.

March 22, 1886, the court entered the following decree:

First. That, pending the final hearing in the cause, Tatlow Jackson be appointed receiver of all the property of the Rochester & Pittsburgh Railroad Company in the state of Pennsylvania, including particularly a line of railway beginning at a point on the boundary line between the states of Pennsylvania and New York, and extending thence through the counties of

McKean, Elk, Clearfield, and Jefferson for a distance of about 100 miles to a point in the neighborhood of Punxatawny in said Jefferson county; and also of the stations, depots, yards, and other property appurtenant to, and used in connection with, said line of railway.

Second. That said receiver shall proceed to operate or make such arrangements for the operation of said line of railway as may be determined to be for the interest of the Rochester & Pittsburgh Railroad Company, and maintain it as a highway for the transportation of passengers and freight.

Third. That the defendant, the Pittsburgh & State Line Railroad Company, its officers, agents, and employees, be enjoined, first, until final hearing of the cause, from taking the earnings, income, and tolls of the line of railroad hereinbefore mentioned, formerly operated by the Rochester & Pittsburgh Railroad Company, or from in any manner interfering with Tatlow Jackson, the receiver hereinbefore mentioned, in taking possession, operating, and taking the earnings, income, and tolls of the said line of railway.

Fourth. That Adrian Iselin and all other persons or corporations claiming under him are enjoined, until final hearing of the cause, from making any claim of right to the possession of or title in said line of railway by virtue of the proceedings taken by the Union Trust Company of New York, for Monroe county, and the sale directed in said proceedings made at Rochester by John H. Davy, referee, on the 16th day of October, 1885.

Fifth. That the Pittsburgh & State Line Railroad Company be enjoined, until the final hearing of the cause, from entering into or ratifying and confirming any agreement with the Buffalo, Rochester, & Pittsburgh Railroad Company for the consolidation and merger of the property, rights, and franchises of said companies.

Sixth. That all orders heretofore made in the cause be confirmed except so far as modified by the decree now entered.

The appellant took this appeal, assigning for error the action of the court in entering the above decree.

*Wheeler H. Peckham, Thomas F. Wentworth, E. Greenough*

*Platt, John G. Hall,* and *John G. Johnson,* for the appellant.—
The New York supreme court of Monroe county had jurisdiction of the proceedings for the foreclosure and sale of the mortgaged premises, both in Pennsylvania and New York. The jurisdiction of equity is *in personam.* Penn v. Baltimore, 1 Ves. Sr. 444; 2 Lead. Cas. in Eq. 4th Am. ed. 1806.

The rule applies to foreclosure proceedings. Toller v. Carteret, 2 Vern. 495; Carrington v. Brents, 1 McLean, 167, Fed. Cas. No. 2,446; Caldwell v. Carrington, 9 Pet. 86, 9 L. ed. 60; Massie v. Watts, 6 Cranch, 148, 3 L. ed. 181; Vaughan v. Barclay, 6 Whart. 392; McElrath v. Pittsburg & S. R. Co. 55 Pa. 189; Muller v. Dows, 94 U. S. 444, 24 L. ed. 207.

The affidavits and the record of the proceedings in New York show that the Rochester & Pittsburgh Railroad Company was duly served, appeared, filed an answer, and must be presumed to have set up every possible defense. Pray v. Hegeman, 98 N. Y. 353; Revere Copper Co. v. Dimock, 90 N. Y. 33; Graham v. Boston, H. & E. R. Co. 14 Fed. 753; Cist v. Zeigler, 16 Serg. & R. 282, 16 Am. Dec. 573; White v. Reynolds, 3 Penr. & W. 97; Duchess of Kingston's Case, 2 Smith, Lead. Cas. 7th Am. ed. 761, 762; Kilheffer v. Herr, 17 Serg. & R. 319, 17 Am. Dec. 658; Ballance v. Forsyth, 24 How. 183, 16 L. ed. 733.

The violation of article 16, § 7, of the Constitution of Pennsylvania in the issue of the bonds must, therefore, be presumed to have been set up as a plea in bar, and adjudicated.

Equity will not interfere in a dispute as to a mere legal right. Schlecht's Appeal, 60 Pa. 172; Carrow v. Ferrier, 18 L. T. N. S. 806; Talbot v. Scott, 4 Kay & J. 96.

The present *lis pendens* is notice to all parties, and is a sufficient reason for the noninterference of a court of equity by preliminary injunction. Osborn v. Taylor, 5 Paige, 515.

The issue of bonds was lawful under the Constitution and laws of Pennsylvania, and is not governed or controlled by article 16, § 7, of the Constitution. It does not take away the power to borrow. The transaction was not necessarily an increase of indebtedness. The purchasers of the bonds were entitled to presume that the money was borrowed to liquidate a prior debt.

The act was capable of ratification, and has been ratified by the acquiescence of the stockholders, and the use of the money. Monument Nat. Bank v. Globe Works, 101 Mass. 58, 3 Am. Rep. 322; Mundorff v. Wickersham, 63 Pa. 88, 3 Am. Rep. 531; McLain v. Snyder Twp. School Dist. 12 Pa. 204; Moss v. Rossie Lead Min. Co. 5 Hill, 137; Hildebrant v. Crawford, 6 Lans. 502; Fister v. La Rue, 15 Barb. 323; Allegheny City v. McClurkan, 14 Pa. 83; Houghton v. Dodge, 5 Bosw. 326; Episcopal Charitable Soc. v. Episcopal Church, 1 Pick. 373; Grove v. Hodges, 55 Pa. 515; Smith v. Hull Glass Co., 11 C. B. 925; Reuter v. Electric Teleg. Co. 6 El. & Bl. 341; Kelsey v. National Bank, 69 Pa. 426; Bank of Kentucky v. Schuylkill Bank, 1 Pars. Sel. Eq. Cas. 267; Phosphate of Lime Co. v. Green, L. R. 1 C. P. 63; Turquand v. Marshall, L. R. 4 Ch. 376; *Re* Cork & Y. R. Co. L. R. 4 Ch. 748.

The corporate seal affixed to the bonds was a ratification. St. Bartholomew's Church v. Wood, 2 W. N. C. 257; Miners' Ditch Co. v. Zellerbach, 37 Cal. 543; New York & N. H. R. Co. v. Schuyler, 34 N. Y. 30; Madison & I. R. Co. v. Norwich Sav. Soc. 24 Ind. 457; Knox County v. Aspinwall, 21 How. 541, 16 L. ed. 208; *Re* County Life Assur. Co. L. R. 5 Ch. 288; Prince of Wales Life & Edu. Assur. Co. v. Harding, El. Bl. & El. 220; Webb v. Herne Bay, L. R. 5 Q. B. 642; *Re* Land Credit Co. L. R. 4 Ch. 468; Agar v. Athenæum Life Assur. Soc. 3 C. B. N. S. 725; Royal British Bank v. Turquand, 6 El. & Bl. 327; Berks & D. Turnp. Road Co. v. Myers, 6 Serg. & R. 12, 9 Am. Dec. 402.

The loan was contracted by the consolidated company in New York, where the transaction was perfectly valid. Graham v. Boston, H. & E. R. Co. 14 Fed. 753; Horne v. Boston & M. R. Co. 18 Fed. 50; Rorer, Railroads, 38, 588, 589, 596.

The bonds, if issued in violation of the Constitution of Pennsylvania, are voidable only, and not void. Payson v. Stoever, 2 Dill. 427, Fed. Cas. No. 10,863; Pullman v. Upton, 96 U. S. 328, 24 L. ed. 818; Zabriskie v. Cleveland, C. & C. R. Co. 23 How. 381, 16 L. ed. 488.

The issue can, therefore, be ratified by the stockholders. Negley v. Lindsay, 67 Pa. 217, 5 Am. Rep. 427.

The mortgage is good for the pre-existing indebtedness of $600,000; and the appellant is a mortgagee in possession, and cannot be disturbed. Ahl v. Rhoads, 84 Pa. 319; Youngman v. Elmira & W. R. Co. 65 Pa. 278.

The appellant is not interested in the proposed consolidation; and, therefore, the injunction against consolidation cannot be sustained. Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132; Ruger v. Heckel, 85 N. Y. 483; Nelson v. Eaton, 26 N. Y. 413.

*R. C. Dale, T. C. Hipple,* and *Samuel Dickson* for the appellees, were not called upon.

PER CURIAM:

This decree is affirmed, the preliminary injunction continued, and the appeal dismissed, at the costs of the appellant.